UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICKOLAS J. STAFFORD,

    Plaintiff,

v.                                                                       Hon. Sally J. Berens

COMMISSIONER OF                              Case No. 1:22-cv-1051
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for Child's Disability Benefits (CDB) and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff protectively filed an application for CDB on February 9, 2015, alleging that he became disabled on September 17, 2004, due to Attention Deficit Hyperactivity Disorder (ADHD), bilateral compound fractures of the right ankle, one leg shorter than the other, and chronic ongoing pain. (PageID.158–59.) On May 12, 2017, Plaintiff filed an application for DIB, alleging that he became disabled as of September 17, 2004, due to the same injuries or conditions set forth in his

2015 application. (PageID.174–75.) Plaintiff was age 30 at the time he filed his CDB application and age 19 at the time of his alleged onset date. (PageID.158.) He had earned his GED. (PageID.359.) Plaintiff had several jobs during the relevant period, including work as a waiter and as a production assembler. (PageID.671.) After Plaintiff's applications were denied, he requested a hearing before an Administrative Law Judge (ALJ).

ALJ Dennis Raterink conducted a hearing on February 26, 2019 (PageID.73–156), and issued a written decision on June 19, 2019, finding that Plaintiff was not disabled prior to the date he attained age 22 for purposes of his CDB application or before his date lase insured of December 31, 2017, for purposes of his DIB application. (PageID.39–67.) After the Appeals Council denied Plaintiff's request for review, he filed a complaint for judicial review in this Court. *Nickolas John Stafford v. Commissioner of Social Security*, 1:20-cv-388 (W.D. Mich.). On April 16, 2021, the Court granted the Commissioner's motion for entry of judgment and remanded the matter under sentence four of 42 U.S.C. § 405(g).

On April 28, 2022, following a remand from the Appeals Council, ALJ Raterink held another hearing, at which Plaintiff and Marne B. South, an impartial vocational expert (VE), testified. (PageID.684–733.) On July 12, 2022, the ALJ issued a written decision finding that Plaintiff was not disabled at any time prior to the date he attained age 22 or at any time before his date last insured. (PageID.637–75.) Plaintiff opted to bypass the Appeals Council, *see* 20 C.F.R. § 404.984(d), making ALJ Raterink's July 12, 2022 decision the Commissioner's final decision.

Plaintiff initiated this action for judicial review on November 9, 2022.

3

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945. For purposes of a CDB claim, the claimant must establish disability prior to attaining age 22. 20 C.F.R. § 404.350(a)(5).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

At step one, the ALJ determined that Plaintiff had engaged in some substantial gainful activity (SGA) after his alleged onset date and after he attained age 22 for the following periods: November and December 2007, June and December 2008, January 2010 through May 2010, and December 2014 through February 2015. However, the ALJ also determined that Plaintiff had not engaged in SGA for at least one continuous 12-month period during the period at issue. (PageID.640–46.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments prior to attaining age 22 and through his date last insured of December 31, 2017: (1) right ankle fracture; (2) osteoarthritis of the right ankle; and (3) obesity. (PageID.646.) The ALJ found Plaintiff's ADHD, anxiety, and stress to be non-severe impairments. (PageID.647–51.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1 prior to attaining age 22 and through his date last insured. (PageID.651–52.)

The ALJ determined that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations:

> [N]o more than frequent use of foot controls on the right lower extremity; can never climb ladders, ropes, and scaffolds; no more than occasional climbing of ramps and stairs, kneeling, or crouching; no more than frequent balancing, stooping, or crawling; and he could never work at unprotected heights.

(PageID.653.)

At step four, the ALJ determined that Plaintiff retained the RFC to perform, as generally and actually performed, his past relevant work as a waiter he performed in 2003 and 2004 and his

past relevant work as a production assembler in 2004, both of which preceded his alleged onset date. (PageID.670–73.) Notwithstanding his step four finding, the ALJ proceeded to step five and, based on testimony from the VE, found that Plaintiff could perform the occupations of marker (DOT Code 209.587-034), garment sorter (DOT Code 222.687-014), and router (DOT Code 222.587-038), 118,000 of which existed in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.673–75.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises three issues in his appeal: (1) the ALJ committed reversible error by finding that Plaintiff had performed SGA and that he thus had a history of past relevant work to which he could return; (2) the ALJ committed reversible error by failing to properly weigh the evidence from Plaintiff's treating physician; and (3) the ALJ committed reversible error by improperly ordering his review of this case, which is demonstrated by his use of improper boilerplate language. (ECF No. 16 at PageID.1181.)

### I.     Performance of SGA

Plaintiff's SGA argument is somewhat confusing, as it appears to conflate the ALJ's step-one and step-four findings. At step one, if a claimant is found to have engaged in SGA, the Commissioner will find the claimant not disabled. 20 C.F.R. § 404.1520(b). Work activity is substantial if it "involves doing significant physical or mental activities," and is gainful if it is "done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(a) and (b). A claimant's earnings are the primary consideration. 20 C.F.R. § 404.1574(a)(1). The regulations create a presumption that a claimant engaged in SGA if his earnings exceeded certain monthly

6

thresholds set by the Social Security Administration (SSA).² 20 C.F.R. § 404.1574(b); *Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990). The ALJ found that Plaintiff's monthly earnings at Best Buy in November and December 2007 exceeded the $900 monthly SGA threshold for 2007; his earnings in June 2008 for ABC Appliance and December 2008 for Best Buy exceeded the $940 monthly SGA threshold for 2008; his earnings from Betten Chevrolet from January through May 2010 exceeded the $1,000 monthly SGA threshold for 2010; and his earnings from DJ's Lawn Service from December 2014 through February 2015 exceeded the $1,070 and $1,090 monthly SGA thresholds for 2014 and 2015. (PageID.643–44.)

Plaintiff fails to demonstrate that the ALJ's calculations were erroneous, but even if he had demonstrated error in the ALJ's step one findings, such error would be harmless because the ALJ found that Plaintiff had established at least one continuous 12-month period in which he did not engage in SGA and continued on to the subsequent steps in the analysis. (PageID.646.) *See Gu v. Comm'r of Soc. Sec.*, No. 19-10901, 2019 WL 7708752, at *3 n.1 (E.D. Mich. Dec. 23, 2019), *report and recommendation adopted*, 2020 WL 409654 (E.D. Mich. Jan. 24, 2020) (noting that any error in the ALJ's SGA analysis at step one was harmless because the ALJ continued with the disability evaluation through subsequent steps in the analysis); *Burris v. Berryhill*, No. 5:16-CV-92, 2017 WL 1381678, at *2 (W.D. Ky. Apr. 13, 2017) ("Because the ALJ continued the sequential evaluation process beyond Step 1 (where SGA is relevant) and denied Plaintiff's disability claim at the fifth and final step, any error at Step 1 was, at worst, harmless."); *Cantu v. Astrue*, No. CV-10-335, 2012 WL 553141, at *4 (E.D. Wash. Feb. 21, 2012) ("Because the ALJ made properly

---

²The monthly earnings thresholds are set forth in the SSA's Program Operation Manual System DI 10501.015(B), "Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity," available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited on June 26, 2023).

supported alternate findings after completing the sequential evaluation process, any error which may have been made at step one is inconsequential to the ultimate nondisability determination.").

In his opening brief, Plaintiff also suggests that some of the periods of SGA the ALJ identified could have qualified as periods of trial work or unsuccessful work attempts. (ECF No. 11 at PageID.1156–57.) In his reply, Plaintiff asserts that he is not arguing that any of the SGA could be considered a trial work period. (ECF No. 16 at PageID.1182.) Regardless, both arguments lack merit. First, the ALJ properly found that none of the identified work could constitute a period of trial work because trial work only arises once the claimant is found disabled, which the ALJ did not do. 20 C.F.R. § 404.1592(e). Moreover, work activity performed prior to the month of the claimant's application—here, February 2015—does not qualify for a trial work period. 20 C.F.R. § 404.1592(d)(2)(iv). The ALJ also properly found that none of the identified periods of SGA constituted unsuccessful work attempts because the record did not indicate that Plaintiff ceased working these jobs due to an impairment or because of the removal of special conditions that allowed him to work even with his impairment. (PageID.644–45.) *See* 20 C.F.R. § 404.1574(c); *Carreno v. Comm'r of Soc. Sec.*, 99 F. App'x 594, 596 (6th Cir. 2004).

Finally, Plaintiff argues that the ALJ erred in concluding that Plaintiff's past work as a waiter and a production assembler amounted to SGA, allowing it to qualify as past relevant work at step four. However, the ALJ fully explained why both positions met the requirements for past relevant work as set forth in the pertinent SSA regulations. (PageID.671–72.) Plaintiff fails to demonstrate any error in the ALJ's step four analysis. Furthermore, Plaintiff wholly fails to address the ALJ's step finding that Plaintiff could perform other work existing in the national economy.

Accordingly, this argument lacks merit.

**II. Evaluation of Treating Physician Opinion**

Because Plaintiff filed his CDB application prior to March 27, 2017, the "treating physician" rule and "good reasons" requirement set forth in the prior regulation, 20 C.F.R. § 404.1527, apply. *Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5315, 2023 WL 1857822, at *6 (S.D. Ohio Feb. 9, 2023), *report and recommendation adopted*, 2023 WL 2692415 (S.D. Ohio Mar. 29, 2023); *see also Hearing, Appeals, and Litigation Law manual* (HALLEX) I-5-3-30)IV(D), available at https://www.ssa.gov/OP_Home/hallex/I-05/I-5-3-30.html (last visited June 26, 2023). It is clear that the ALJ applied the former rule in reviewing Plaintiff's claims. (PageID.653, 665–66.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported

9

by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "'are not well-supported by any objective findings' and are 'inconsistent with other credible evidence'" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Plaintiff contends that the ALJ erred in weighing the opinion of his treating podiatrist, Corwyn Bergsma, D.P.M. (PageID.600–03.) The ALJ summarized the opinion and gave it little weight as follows:

> In January 2019, Corwyn Bergsma, D.P.M., a treating doctor of podiatric medicine, assessed the claimant could walk less than a city block, stand 10 minutes, and sit more than 2 hours at a time, indicating he could stand and walk less than 2 hours in an 8-hour workday but could sit at least 6 hours in an 8-hour workday (Ex. 8F/4). He opined the claimant needs a job that permits shifting position at will from sitting, standing, or walking (Ex. 8F 4). He estimated the claimant would need three to five unscheduled breaks a shift due to weakness and pain [sic] numbness with each break lasting 40 minutes (Ex. 8F 4). He assessed the claimant's legs should be

10

> elevated to hip left [sic] 75 percent of the time due to pain and swelling (Ex. 8F/5). He noted the claimant could lift and carry 20 pounds rarely, 10 pounds occasionally, and less than 10 pounds frequently, with rarely defined as one to five percent of an eight-hour workday (Ex. 8F/5). He opined the claimant could frequently twist and stoop, but only rarely crouch and climb ladders and stairs (Ex. 8F/5). He estimated the claimant would be off task 10 percent of the workday (Ex. 8F/6). He opined the above noted deficits have been in effect since approximately 2011 (Ex. 8F/6). However, Dr. Bergsma indicated the claimant did not require an assistive device (Ex. 8F/5). He noted emotional factors did not contribute to the severity of the claimant's symptoms and functional limitations (Ex. 8F/3).
>
> Dr. Bergsma had the opportunity to examine and treat the claimant. He is a specialist in the field of podiatry. However, he did not examine or treat the claimant during the periods prior to the attainment of age 18 and through the date last insured, with his treatment of the claimant beginning in September 2018 (See, generally, Ex. 1F-13F). This assessment was provided more than a year after the date last insured. Dr. Bergsma's assessment is not well supported and consistent with the longitudinal treatment record for the periods prior to the attainment of age 22 and through the date last insured. As noted above, imaging studies have demonstrated healing of the claimant's fractures with relatively mild degenerative changes (Ex. 2F/2-5, 15; and 5F/64). During evaluations, claimant often presented with normal or no more than mildly limited range of motion (Ex. 2F/4-5, 16; 3F/1, 8; 5F/11, 16, 20-22, 28, 37-40, 46, 53, 61, 67). The record does not show ongoing swelling (Ex. 2F/16; 3F/1, 8; 4F/2; 5F/16, 20-22, 40, 50, 57-60). The claimant often had intact strength, with no atrophy observed in November 2006, April 2013, and December 2017 (Ex. 3F/1, 8; 4F/2; 5F/3, 60, 67; and 6F/2). In July and September 2015, the claimant had normal stability with no tenderness (Ex. 5F/20-22). In December 2017, the claimant could squat and he was able to get on and off the examination table, arise from sitting without aid, and maintain balance without aid (Ex. 6F/2-5). This assessment is not consistent with the longitudinal treatment record for the periods prior to the attainment of age 22 and through the date last insured, which demonstrates some improvement with treatment (Ex. 3F/1, 4-5; 5F/19-21, 38, 40-41, 53, 57, 61; and 9F/3-5, 10; See, generally, Ex. 2F). Therefore, I give little weight to the opinion of Dr. Bergsma.

(PageID.665–66.)

The ALJ properly considered that Dr. Bergsma rendered his opinion more than a year after Plaintiff's date last insured. *See Schlacter v. Astrue*, No. 1:08cv617, 2012 WL 567609, at *10 (N.D. Ohio Feb. 21, 2012) ("The ALJ did not ignore these opinions, but he reasonably attributed them little weight because of the lapse of time between Plaintiff's date last insured and the rendering of treatment by the doctors and the issuance of their opinions."). The ALJ also found the

11

doctor's opinion not well supported and inconsistent with the longitudinal treatment record. The ALJ gave good reasons, supported by substantial evidence, for giving Dr. Bergsma's opinion little weight. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175–76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion."). Plaintiff's contention that other evidence in the record could have supported a different outcome is simply a request that the Court re-weigh the evidence and reach a different conclusion than the ALJ. *See Roberts-Mullett v. Comm'r of Soc. Sec.*, No. 1:20-cv-352, 2021 WL 4437731, at *1–2 (W.D. Mich. Sept. 28, 2021).

Finally, as part of this argument, Plaintiff contends that the ALJ erred by giving greater weight to the opinion of state agency medical consultant Myung Ho Hahn, M.D., than he gave to Dr. Bergsma's opinion because Dr. Hahn was not a podiatrist and did not examine Plaintiff. (ECF No. 11 at PageID.1158.) But neither of these differences preclude an ALJ from giving greater weight to a non-examining physician's opinion than that of a treating physician. It is well established that "an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015) (citing 20 C.F.R. § 404.1527). The ALJ recognized that Dr. Hahn had not examined Plaintiff, but he noted that Dr. Hahn had the opportunity to review most of the medical evidence prior to rendering his opinion. (PageID.663.) The ALJ further found Dr. Hahn's opinion well supported and consistent with the longitudinal treatment records for the periods at issue in Plaintiff's applications. (*Id.* at PageID.663–64.) Plaintiff fails to demonstrate error in this finding. Moreover, the fact that Dr. Hahn was not a podiatrist is of no moment, because State-agency reviewers are highly qualified physicians who

12

are experts in the evaluation of Social Security disability claims. *See* 20 C.F.R. § 404.1513a(b)(1); SSR 96-6p, 1996 WL 1374180, at *2 (July 2, 1996). Therefore, this argument lacks merit.

**III.     Evaluation of Subjective Symptoms**

Last, Plaintiff contends that the ALJ erred in evaluating his subjective symptoms because he included a standard boilerplate paragraph finding Plaintiff's alleged symptoms not entirely consistent with the medical and other evidence in the record that preceded his discussion of his reasons for discounting Plaintiff's subjective complaints. Plaintiff does not dispute, however, that the ALJ properly mentioned and discussed the pertinent considerations from the applicable regulation throughout his RFC analysis. (PageID.653–70 (discussing factors set forth in 20 C.F.R. § 404.1529(c)(3)).) In fact, the ALJ concluded his analysis by summarizing his reasons—set forth in more detail earlier in his decision—for discounting Plaintiff's claims of disabling symptoms. (PageID.670.) Because an ALJ's decision is to be read as a whole, *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review"), the ALJ was not required to set forth his analysis in any particular order. When read as a whole, the ALJ properly articulated his reasons for discounting Plaintiff's subjective complaints, which were supported by substantial evidence. Plaintiff demonstrates no error.

**Conclusion**

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, the Commissioner's decision will be **affirmed**.

An order consistent with this opinion will enter.


Dated: June 28, 2023                     /s/ Sally J. Berens
                                         SALLY J. BERENS
                                         U.S. Magistrate Judge